# LINCOLN v. NATIONAL METROPOLITAN BANK.

---

### BILLS AND NOTES; NOVATION.

Where a bank, after having made a loan to a construction company on a promissory note payment of which was secured by an accepted order of the company on a third party to pay to the bank money which would be due the company, applied a partial payment received from the third party to the reduction of the debt, and then took for the balance of the debt the personal note of the president of the company, which was secured by the note of the company payable to itself, the transaction must be considered as a novation, whereby the bank surrendered its original security and accepted a new obligation therefor.

No. 2139.   Submitted May 6, 1910.   Decided May 27, 1910.

---

*See *Thurston* v. *McLellan*, 34 App. D. C. 294.—REPORTER.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia on a verdict
directed by the court in favor of an intervening claimant in an
attachment proceeding.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This cause came here on appeal from the judgment of the
supreme court of the District of Columbia in an attachment
proceeding. It appears that on September 11, 1906, the ap-
pellant, S. Dana Lincoln, trading as National Mortar Com-
pany, hereafter referred to as plaintiff, brought suit in the su-
preme court of the District of Columbia against the Southern
Construction Company, a corporation, for the sum of $968.57,
for material furnished it in constructing a building in this city
for the National Metropolitan Bank, appellee, hereafter, for
convenience, referred to as the bank. At the same time a writ
of attachment was issued, which was returned on February 6,
1907, showing that certain credits belonging to the Southern
Construction Company had been attached in the hands of the
Thompson-Starrett Company, garnishee.

On March 12, the Thompson-Starrett Company answered
that in December, 1905, it had contracted with the Southern
Construction Company to furnish and erect all the fireproofing
necessary in the construction of the National Metropolitan
Bank building. It is alleged in the answer that subsequently
the Southern Construction Company failed, and the Thomp-
son-Starrett Company was compelled to complete the work, and
that there was left in its hands the sum of $1,029.60, which was
claimed by a number of parties, among whom was the defend-
ant bank, which claimed a right to it under an alleged assign-
ment of any and all payments that might become due the
Southern Construction Company under its contract.

The plaintiff joined issue on the answer of the garnishee,
and shortly thereafter the garnishee paid into the registry of
the court below the sum of $1,029.60, the amount admitted to
be in its possession. Before the cause came on for trial, the

bank, by leave of the court, filed an intervening petition in which it set up its claim to the fund, alleging, among other things, as follows:

"2. That heretofore, to wit, on the 17th day of February, 1906, the defendant, Southern Construction Company, gave an order upon the Thompson-Starrett Company, a party herein, directing it to pay over to this intervener any and all payments, as they might become due, according to the contract of the Southern Construction Company with the Thompson-Starrett Company, for work to be done on the National Metropolitan Citizens Bank building, and that such order was forthwith duly accepted by the Thompson-Starrett Company, and that such order and acceptance thereof at once communicated to this intervener, and that, relying upon such order and acceptance, the said bank did, on or about the 19th day of February, 1906, loan to said Southern Construction Company the sum of two thousand (2,000) dollars, taking its note therefor, and holding said duly accepted order as collateral. That thereafter, and prior to the filing of the attachment in this case, there became due to the Southern Construction Company by the Thompson-Starrett Company, because of the work upon the building of the intervener, a large sum, to wit, the sum of twelve hundred (1,200) dollars, which sum, or so much thereof as the Thompson-Starrett Company admits to have been due by it to the Southern Construction Company, has been paid into the registry of this court, attachment having been served herein upon the Thompson-Starrett Company before said payment could be made.

"That, at and before the time of the service of said attachment, there was and still is due to the said bank, the intervener herein, by the Southern Construction Company, as balance of the aforementioned loan of two thousand (2,000) dollars, the sum of twelve hundred (1,200) dollars, for which it gave, as a renewal of the aforesaid note for two thousand (2,000) dollars, its note to the National Metropolitan Bank dated August 14, 1906, payable sixty days after date, with interest at the rate of 6 per centum per annum until paid; the original note of

two thousand (2,000) dollars having theretofore been reduced by the payment of interest and eight hundred (800) dollars on account of the principal thereof, out of funds paid to the said intervening bank by the Thompson-Starrett Company, pursuant to and in reliance upon the aforementioned assignment of February 17, 1906."

On trial, the jury was instructed to return a verdict for the defendant, and, from the judgment entered thereon, the cause comes here on appeal.

*Mr. Percival M. Brown* and *Mr. Walter B. Guy* for the appellant.

*Messrs. Ralston, Siddons, & Richardson* and *Mr. Walter D. Davidge* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

A number of assignments are made of errors alleged to have occurred in the course of the trial, which, we think, need not be considered. For the purposes of this appeal, it is only necessary to consider the assignment charging error in granting the peremptory instruction of the defendant directing a verdict in its favor. The order or assignment upon which defendant asserts its right to the fund in question consists of the following letter:

Baltimore, February 17, 1906.

Messrs. Thompson-Starrett Co.,

 14th and G Streets N. W., Washington, D. C.

Gentlemen:—

We hereby authorize you to pay over to the National Metropolitan Citizens Bank any and all payments as they may become

due, according to our contract with you for work to be done on the National Metropolitan Citizens Bank building.

.Very truly yours,

(Seal)                    Southern Construction Company,
                              Warfield Ward, President.
                         J. Hurst Purnell, Sec. & Treas.

Accepted by
    Thompson-Starrett Co.
    B. C. Dickinson, Mgr.

Two days prior to the giving of this order, a letter was written by the Southern Construction Company to the president of the bank, which is to some extent explanatory of their transactions. It is as follows:

Feb. 15, 1906.

Mr. E. S. Parker,
        President National Metropolitan Citizens Bank,
            Washington, D. C.

Dear Sir:—

Confirming the conversation the writer had with you this morning, we beg to make application for a loan of $2,000. We have at present $6,000 worth of hollow tile fireproofing stored in Washington, which is to be used in fireproofing your new building. We are willing to assign this material over to you, and likewise any payment which will be due us from the Thompson-Starrett Company on our erection of the work. This loan to be placed to our credit in your bank and to be subject to our check.

We would be very glad to have an answer from you by Saturday, February 17th.

Respectfully submitted,
        Southern Construction Co.
        Warfield Ward, President.

The validity of this assignment is vigorously assailed by counsel for plaintiff. We think it unnecessary, however, to

consider this point, since, conceding, for the purposes of this appeal, that the assignment is valid, a question upon which we express no opinion, it is apparent that, at the date of the attachment, the loan for which it had been taken by the bank as security had been satisfied, at least, to the extent of preventing the bank from claiming a lien on the fund in question superior to that acquired by the attaching creditor. It appears that the bank applied the last payment received from the Thompson-Starrett Company, amounting to $885.50, to the reduction of the original loan, and took a new note on August 14, 1906, for the sum of $1,200, surrendering the original note. The new note reads as follows:

$1,200.                    Washington, D. C., August 14, 1906.

Sixty days after date we promise to pay to the order of ourselves twelve hundred dollars at National Metropolitan Bank, Washington, D. C.

                              Southern Construction Co.,
                                    Warfield Ward, President,
                                    J. Hurst Purnell, Sec.-Tr.

Value received.

No. ———

Due Oct. 15th.

The note was indorsed on the back as follows:

J. Hurst Purnell,

Warfield Ward,

Southern Construction Company,

Warfield Ward, President,

J. Hurst Purnell, Sec.-Tr.

410 Cont. Bldg., Balto., Md.

This note was allowed to become long overdue. The bank, on July 15, 1907, took the personal note of J. Hurst Purnell for the sum of $1,200, and took the note of the construction com-

pany as collateral security for the payment of the personal note. The Purnell note reads, in part, as follows:

$1,200.                    Washington, D. C., July 15, 1907.

On demand, for value received, I promise to pay to the National Metropolitan Bank of Washington, or order, at office of said bank, in the city of Washington, District of Columbia, twelve hundred dollars, with interest at the rate of 6 per cent per annum, having deposited with said bank, as collateral security for the payment of this note, and also as collateral for all other present and future demands of any and all kind, of the said bank against the undersigned, due, or not due, the following property, *viz.:*

Note, Southern Construction Company, for $1,200, dated August 14, 1906, for sixty days, and indorsed by Warfield Ward and J. Hurst Purnell, and do hereby authorize the said bank, on the nonperformance of this promise, or the nonpayment of any of the demands aforesaid, or failure to furnish further security as hereafter agreed, to sell the whole or any part of said collaterals or substitutes therefor or additions thereto, at any broker's board or public or private sale, at the option of the said bank without notice, etc.

The Purnell note, by this transaction, became the primary evidence of indebtedness. The bank could not recover on both notes. Neither, could it select which one it might treat as the primary security. It had placed itself in a position where it could only dispose of the construction company note as collateral in the event of its failure to recover on the Purnell note,—a contingency which never happened. The law does not favor uncertainties. The bank cannot treat Purnell as its debtor on its books, and thereby, for the purpose of inspection, remove overdue paper from its books, and, at the same time, claim the protection here sought in the courts. The auditor for the bank attempted to explain the reason for the taking of the Purnell note as follows: "This note was given to keep an overdue note of the Southern Construction Company off the books, balance of $1,200 due on the Southern Construction Company note,

and the note was taken from Mr. Purnell with that Southern
Construction note as collateral in order to keep the paper alive,
take the overdue paper off the books." On the strength of this
testimony, it is claimed that the bank never surrendered pos-
session of the construction company note. Its officer at the
trial did not so testify. His evidence is that the note "had
never been out of the bank." This, however, is of little im-
portance, since the taking of the Purnell note and the transfer
of the construction company note to the position of collateral
security constituted in law a constructive delivery of the con-
struction company note to Purnell and a change of possession.
The transaction must be treated as a novation, whereby the bank
surrendered its security under the assignment from the con-
struction company, and accepted the primary obligation of Pur-
nell, secured by the construction company note, which Purnell
put up as collateral. The title to the construction company
note passed to Purnell, and with it all right of the bank to
assert its lien against the fund here in question became extin-
guished.

It is claimed by counsel for defendant that the assignment
was general in its terms, and nothing short of the satisfaction
of the debt to the bank would satisfy the object and purpose of
the assignment. Without discussing the validity of the assign-
ment, it is sufficient to call attention to the fact that counsel
overlook the difficulty which confronts them, that the debt of
the construction company to the bank has been satisfied. The
Purnell note accomplished this. The power of the bank to
take money due the construction company from the Thompson-
Starrett Company no longer existed. That right did not pass
to Purnell by the delivery of the construction company note,
and could not, therefore, pass back when the note was put up
with the bank as collateral for the payment of a different obliga-
tion. The title to the note still remained in Purnell, subject
to be forfeited to the bank for failure to pay his own note. We
are unable to discover any theory upon which the defendant
can claim a lien upon the fund in question superior to that
acquired by plaintiff under the writ of attachment.

We are not unmindful of the rule that the assignment or transfer of a note usually carries with it the security for its payment. This is especially true in the case of mortgages, deeds of trust, and instruments executed and of record as security for the payment of notes or bonds of indebtedness. But we think the present alleged assignment does not come within that class of securities. Here the letter of the construction company to the Thompson-Starrett Company was an order for it to pay any balance due it to the bank. It is obvious that the Thompson-Starrett Company would not have been justified in paying this money to a third party upon the order of the bank. The test of the validity of the assignment lies in the power of the bank to enforce its claim against the Thompson-Starrett Company, over the objection of the construction company, and the further right of the Thompson-Starrett Company to comply with its conditions, and at the same time escape liability to the construction company.

In arriving at the right of the bank to lay claim to the fund in question under the assignment, it is beside the case that no objection is being made by the construction company. The legal test to be applied is whether such objection could be made. With this situation presented, it can hardly be claimed that the bank, under a personal assignment which in effect furnished a mere cloak through which it passed to the construction company over $10,000, without applying any part of this sum to the liquidation of the $2,000 loan, could assert a lien superior to that of the attaching creditor. During the time that these transactions were being carried on between the bank and the construction company, the note was repeatedly renewed.

Referring to these transactions in detail, the witness Purnell, secretary and treasurer of the construction company, testified on cross-examination as follows: "On cross-examination, the attention of the witness was called to the fact that the alleged assignment to the bank was dated February 19, 1906, and the checks offered in evidence, aggregating over $11,000, were all paid to the bank after that date; the witness was asked whether the bank received money from the Thompson-Starrett Company

after that, and witness replied that the checks were all made out for the account of the Southern Construction Company; in all instances except one, the bank gave the Southern Construction Company credit for the full amount of these checks, until August 10, 1906, the date of the last check, for $885, when the Southern Construction Company asked the bank to renew the note for $2,000, and the bank refused to do this, but said that it would take a new note for $1,200, and thus the $2,000 note was reduced to $1,200. Witness was asked what authority he had to tell the bank how to apply the money received on these checks from the Thompson-Starrett Company, and replied that, when the bank notified them that it had received a check for work which the Southern Construction Company had done the previous month, Mr. Ward and witness came over to see the bank, and asked it to continue the loan for $2,000, and to let them have the check, and, at their request, the bank would let them have the check; that they never received a cent from the Thompson-Starrett Company after the assignment was given to the bank; that they got that $885 in August by its being deducted from the $2,000 note; that the bank turned the amount of the said checks received by the bank after the date of the assignment, over to them without collateral security; and that there was always margin enough for the protection of the bank."

Though there is no evidence of fraudulent intent on the part of the bank, and none can be reasonably inferred from the record, yet it must be remembered that the building was being erected for it; the material furnished by plaintiff went into it, and the bank must have known of the existence of dealings between plaintiff and the construction company. While these facts do not in themselves determine the nature or legal effect of the assignment in question, or whether it would follow the transfer of the note to Purnell, and, as collateral, back to the bank, yet they are important in ascertaining the intent of the parties at the time the assignment was made. If the assignment was for the sole purpose, as appears from the record, and as we must assume, to secure the loan of $2,000 from the bank to the construction company, the bank should have promptly

applied the funds coming into its hands to that purpose. This it did not do. It violated the intent the parties presumably had in making the assignment, and thereby prejudiced the rights of the plaintiff, who was ignorant of the existing relations between the bank and the construction company, when it extended credit to the latter. Assuming again the validity of this assignment, a matter not free from doubt, it cannot be held that it was within the contemplation of the parties that it should extend further than to authorize the bank to hold out sufficient of the funds coming into its hands to satisfy the loan. This it failed to do, when ample opportunity was afforded. It elected to accept other security, and, by so doing, forfeited further claim upon the fund in question.

The judgment is reversed, with costs, and remanded with instructions to proceed in accordance with the views expressed in this opinion.                                    *Reversed.*

Mr. Justice ANDERSON, of the supreme court of the District of Columbia, sat with the court in the hearing and determination of this appeal, in the absence of Mr. Chief Justice SHEPARD.